All right, next case we'll hear is United States v. Christopher Bell, and Mr. Mace, whenever you're ready. Good morning. May it please the Court, Russell Mace on behalf of Appellant Christopher Bell. This case comes out of the District of South Carolina, and I'd like to start off by addressing a timeline that I feel is very important in this case. And I would also like to limit my arguments to the two main issues I feel are most pertinent for the Court, the prosecutorial vindictiveness and the bats and challenges that occurred. We raised several other issues, but I feel like these two issues would be the most important to address here today. The timeline on this case, I would argue, is indicative of what actually occurred and actually goes to substantiate our claim of prosecutorial vindictiveness. Mr. Bell was originally indicted in July of 2008. 851 Enhancement was filed in September of 2008. The plea agreement was filed in August of 2009, and Mr. Bell was sentenced in February of 2010. Thereafter, this Court remanded the case with an agreement from the government that that plea agreement would be vacated and this case would start anew. The case was remanded in January 2011, and it was back in the District. Mr. Bell requested what set aside the plea agreement? Yes, sir. In February, the case was back in the District of South Carolina before Judge Seymour. There was actually an ECF notice sent out noticing the case for trial. May I ask a question about this issue of the remand? Because I think part of your argument with respect to prosecutorial vindictiveness is that the government was unhappy with this turn of events, but they consented, didn't they? They consented after a period of time. It was not an immediate consent. There were briefs filed. This was not a situation where the notice of appeal was filed and the government said, don't worry about filing a brief. We agree to it. Remand it back. There was a pretty extensive brief filed by an attorney out of D.C. In the second indictment, in the succeeding indictment that they filed, did they increase the risk to Mr. Bell? They did, Your Honor. I thought he was subject to life imprisonment under the first indictment. That was the maximum he could receive. Same maximum exposure. And what was the mandatory minimum under the first indictment? Under the first one, it was 10 years. Under the second one, it was increased to 20 years. We have an intervening event that actually goes, that provides a vast amount of information. Is that the Fair Sentencing Act? Yes, ma'am. No, I'm sorry. I was going to say, it looked to me like they were adjusting for the Fair Sentencing Act. They had plenty of drugs involved and they just wanted to allege the threshold to satisfy what had been the circumstance before the Fair Sentencing Act. And in doing that, they also wanted to punish Christopher Bell and prohibit him from getting the benefit of the Fair Sentencing Act. So there's an underlying... Except their intent is revealed by the first indictment. They filed the 851 notice and they had a pretty serious drug trafficker here. And when the Fair Sentencing Act came out and reduced what they had intended to charge, they brought their charge back up to what it was before because they thought that was appropriate in the circumstances of the drug. There's no evidence that they were trying to punish him. It looks to me like the fact that they charged 280 grand is pretty indicative. They didn't just blow off the roof and put in the full amount that they could find in the conspiracy. They just raised it to the very threshold that the act provided. Your Honor, if we were to encapsulate that one count, the first count, the conspiracy count, that might have some justification. But I would disagree on that count in the fact that they added, I believe it was five kilograms or more of powder cocaine, which was not in the first indictment. It was only crack cocaine in the first indictment. So now we're expanding count one to encompass a different drug. And that's now in the indictment. I'm sorry. I certainly understand that there were additional allegations. What I'm having trouble understanding, or what I would ask you to do, is you think that the Fair Sentencing Act was one reason for amending the threshold, but it was also vindictiveness. So what evidence goes specifically to vindictiveness? The Fair Sentencing Act is pretty clear to me. Okay, well, if I can go back to my timeline, I think I can show you. I hope I can. The case is remanded January 2011. In the district court, the case is actually set for trial. A new counsel is appointed. A motion is filed on July 12, 2011 by trial counsel asking the trial court, Judge Seymour, to apply the Fair Sentencing Act to this case. At that time, Christopher Bell and the government are proceeding on the original indictment, alleging just crack cocaine. And 851 is filed three days later, basically exposing Christopher Bell to a minimum of life in prison. Judge Seymour questions the government about this at a motion hearing, and the government basically says, we forgot, it was a mistake, we didn't know he had two prior felony convictions. She actually steps in and dismisses that 851 at the request of the defense attorney. But it goes to show the motivation that's occurring here. On top of that, immediately after a motion to quash is filed, the government files a superseding indictment four days later. That superseding indictment, and as this court's aware from the Wilson decision, and we go back to Blackledge, this is not an identical indictment. We wouldn't be here if the government went forward on their original indictment. We wouldn't have a basis for it. If Christopher Bell still faced that original indictment that he had in 2008. The Fair Sentencing Act diluted that indictment, right? But that's what it's supposed to do. It was supposed to benefit defendants. It was unclear then whether it operated retroactively. The Supreme Court in Dorsey, I guess, did that later. And so there's an exposure that the U.S. Attorney sees as to whether it applies retroactively or not, and tried to equalize the playing field. And Judge, I would agree with you if it were not for the fact that this case was coming back on a remand. If this was a pre-filed decision and the original indictment encompassed the aiding and abetting, which they added to all the substantive counts, which were simple controlled buys, but they lowered their burden of proof by putting an aiding and abetting count on all of the substantive counts, except count one, the conspiracy count. So it goes to show their motivation. When this case comes back from remand after this court grants it, they're now upping the ante dramatically for Christopher Bell. His exposure has changed tenfold from the original indictment that he thought he would be facing when the case was remanded to the new superseding indictment. And the motivation of the U.S. Attorney's Office is shown by filing the other 851. And to go further than that, after Christopher Bell is found guilty, and Judge Seymour has already stricken the second 851, giving him life in prison as a minimum, the government makes an objection to the pre-sentence report asking that he still face the life in prison. After Judge Seymour has already denied that. The motivation of the U.S. Attorney's Office... Did the pre-sentence report suggest it was mandatory life? Originally, yes, until Judge Seymour struck the second 851. But the government comes back in... What did the first 851 expose him to? Twenty to life. So he's still exposed to life. He's still exposed to life at the top, but the bottom changes. So the minimum sentence changes. And the government wanted it to be life to life. So we're showing... So the court said that might be inappropriate at this stage and rolled it back. Well, what Judge Seymour did was she questioned the government on why they didn't file that 851 in the original indictment. Why are they now waiting until the eve of trial on the second superseding indictment? Your argument is that that's evidence of the government's motive. Absolutely. But he was sentenced 380 the first time and he was sentenced 380 the second time. That's correct. And that argument... And I can see where the court would go. Harmless error here. He got the exact same sentence. What relief do you want? I want the case to be remanded and allow Christopher Bell to stand for the original indictment and eliminate any prosecutorial vindictiveness with the superseding indictment that occurred and eliminate the 851 as Judge Seymour's already done. Well, he would still be exposed to life. You're absolutely right. But he would not be exposed to... He got a generous sentence, didn't he, under the current thing? I mean, he got the bottom of the line. Judge, quite frankly, I don't ever consider 30 years a generous sentence. 30 plus 20. It depends what the conduct is. It does. And we're talking about a gentleman that had two prior felony convictions and those were the predicate offenses for the 851. We're not talking about a gentleman that had an extensive drug past. There have been defendants that have been before this court and have been before district courts that have 50 prior convictions. But he was sentenced... He was sentenced the first time to 380? That's correct. He was sentenced the second time to 380? That's correct. Where's his harm? His harm is the fact that he may not have been found guilty but for the change in the superseding indictment. By adding the aiding and abetting, the government lowered its burden and put him in a worse position than he was in the original indictment. That shows the actual vindictiveness of the prosecution in this case. Well, or zealous advocacy. One or the other. I would agree if he was a defense attorney. But the USA's and the Justice Department are held to a different standard and even the case law says this court and every court gives them deference in their charging decisions. And their charging decisions are not to be evaluated. If we start it over, can the government start over with a new indictment? I would argue no because we would be possibly back here arguing the same thing if a new indictment comes down. The government made a filing decision. They decided we're going to charge him with crack cocaine and three substantive counts controlled by us. The case gets remanded from this court and the government changes their mind about the Fair Sentencing Act. And this is crucial in the timeline. They did not supersede this indictment when it got remanded back to the district. They waited until the defense attorney that was appointed to the case shows he's going to fight the case and he asked the judge to apply the Fair Sentencing Act. Obviously the risk pointed out to the government was the risk of retroactive application of the Fair Sentencing Act. Or maybe direct application. I don't know what the Fair Sentencing Act was enacted on August 3, 2010 or whenever it was. Judge, I would submit that we're not in a position where we want the government or the Justice Department looking at new laws that are passed and circumventing them in order to punish a defendant more severely. They made an original filing decision in this case. That should have been the indictment that Christopher Bell went to trial on. Not a superseding indictment. Congress changes the penalty that they charged originally. They charged originally, they made a decision and they know what the penalties are, they know what the crime is. Now Congress comes back and says one of those counts, we're going to apply a different standard and now it impacts their original decision. They should be able to re-look at it. I would agree. If it was in a pre-file, pre-indictment stage. But in this case, they made that decision. They went forward with their indictment. They presented the testimony to the grand jury. And that's what triggers the prosecutorial vindictiveness in this case is the fact that the case is remanded and they now take a second bite of the apple and decide what they're going to change and they're going to change it in a way that's going to prejudice Christopher Bell and gives a chilling effect to any other defendant that exercises his or her appellate rights. So we're put in a position here where the government is on notice that what they're doing is going around the purpose of the Fair Sentencing Act. The purpose of the Fair Sentencing Act is... What was the problem with his first plea? Was he suggesting it wasn't voluntary? Judge, it was a situation where he was prepared to go to trial and then took a plea on the day of jury selection. So the allegation was that it wasn't freely and voluntarily. It was kind of a pressured situation. With respect to the sentence, I thought that during the initial case, the first time around, he got one single sentence of 360 or 80 months. But the second time around, he got two concurrent sentences. Are you making any argument that that sentence, because, in fact, there were two sentences even if run concurrently, that that's more severe punishment? No, I'm not arguing that. I'm not arguing that concurrency would be more severe. Consecutive, yes, but not. Could I ask about your Batson argument? Could you talk to me about your prima facie showing that the government exercised its preemptory challenges on the basis of right... showing that Mr. Bell has to make? Quite frankly, Judge, it speaks for itself. The government used seven preemptory challenges on seven... What if the whole jury panel were all African-American? I've never seen that in federal court. It doesn't matter. It's not in the record one way or the other. I agree it's not in the record. We don't know what the jury makeup is. We don't know what the panel's makeup. I agree. And we don't have any comparators. And I think that's an obligation of the district court judge. I think the district court judge... You have to make the record. I agree that there needs to be some form of a record presented on that. Well, and the burden is on Bell. To a certain degree, but I think he has, by making the Batson challenge and putting the court on notice that we have seven challenges, all of them used against African-Americans. But, okay, the first step, the prima facie step is based on race, right? Right. So we have the race of the persons with respect to whom the peremptory challenges were exercised. We don't have any information regarding the jury pool. We do have the government with some pretty decent explanations, one indicating a conviction for simple possession of marijuana, one who had family members who had faced similar drug convictions. So I'm still concerned about that prima facie showing. And although you objected to the reasons, despite having the burden of proof, I don't see anything that you never produced a comparable that gives us a point of reference. Judge, I agree with you that the trial court below, there was not another specific juror that the defense attorney was able to point out that Juror Smith was seated and that we had the exact same reasons. I agree that's not in the record. And there has to be, as a part of the prima facie case, something that shows some basis to show that the determinations were made because of race. Judge? Even to get to the point where the government has to address it. Normally, I would agree with you. Absolutely and wholeheartedly. But I believe, without question, when a district judge is sitting and an AUSA strikes every African-American juror that presents... But that simply isn't the law. The burden stays with the... And if the judge is picking the jury on... There's different methods of picking juries. And one method is to put people in seats. And if the government exercises a strike with respect to seat number three and they put another African-American in seat three and that person's allowed to sit, that doesn't get you very far. Well... Even though all the strikes ended up being... The government strikes ended up being against African-Americans. If each one of them was replaced by an African-American and the government allowed those persons to sit... I mean, Judge Seymour is presiding over the courtroom and if she senses there is something afoul here, I'm confident she would have raised it. And the truth of the matter is we just don't have the record that permits us to reach the conclusion you want. The simple fact that all the peremptories happen to be against African-Americans... Well, Judge, again, I do believe there is enough record as Judge Seymour did and that record is full of information that this court can read that these are pretextual reasons. Now, I agree, Judge Duncan, there were valid reasons for a couple of these jurors. But the problem is there's a factual determination that has to be made that the defendant has the burden to make. We don't know who replaced the challenges and that really isn't the role of the court to go back and assess in the first instance. I think the law is quite clear that the burden to make the prima facie case is on the party making the Batson challenge. And the burden never shifts from that party. And certainly, as to the prima facie case, it has to be brought to the attention of the district court in the first instance to have an opportunity to address it. And in this case, Defense Counsel Bloom, when he made his objections, he actually told Judge Seymour, Judge, there are other jurors that were seated that had the exact same answer. Now, with that in mind, this court may say, well, he should have laid out the name of the juror, what the exact question was. And at some point, there has to be a demarcation where this court is able to look at what a district court did on a Batson challenge and say, wait a minute, that is a pretextual reason on its face. I must say, though, we couldn't determine. I read these reasons and they looked race neutral. And what's in this record, they looked race neutral. And that's what Judge Seymour concluded. And there's nothing else in the record to say Judge Seymour was overlooking something or didn't pay attention to something. I mean, we just don't know. This record is clean. They gave about five of them, four or five of them, they gave situations that were unique to that particular juror and would be reasons that I think a lawyer, whether they're good or bad, but they looked to me like they were even pretty valid, but they certainly were race neutral. Judge, I've never seen a transcript or a trial where a prosecutor or an AUSA says, I'm striking this person because they're black or they're Asian or they're Hispanic. They don't say that. They talk about reasons and then of course what happens is the defense, we get a lot of bats and challenges. And the dialogue would be the government in a difficult situation, the government gives a reason, they had an intuition, they didn't like it, but they give a reason or they amplify it. And the defense attorney says, well, if that's their reason, there were three others who were in that same boat and they didn't strike those three others. And that is often the case and now you start wondering, okay, what is happening? But in this record, you never get to that conclusion when you read the dialogue. The dialogue is the government gives a reason and the defense doesn't say, oh, there's two others fitting that situation or that's not a valid reason. And we start with the fact that the judge made factual findings that have to be demonstrated to be clear error, don't they? Judge, I agree with you to a certain extent, but I also think that this court can't put blinders on and say these allegations of why we struck these jurors. I don't think we put blinders on. I can tell you, we read between the lines. The court gives a lot of attention and if you read the transcript and read the record, if you have an intuition or a sense that something hunky-dunky or dory is going on in that courtroom and it's not being shown, that didn't come through. Well, Judge, I would disagree on juror number 206. Hunky-dory. Hunky. I'm being corrected on whatever I, whatever my reference is. Just briefly, Judge, if you want, I'll save it for my rebuttal. If you want me to save it for my rebuttal regarding specific jurors and the specific reasons that the AUSAs gave for striking those jurors. That's fine. All right. I don't know how much time do I have left. How much time do I have left? You do have rebuttal. Good morning, Your Honors. May it please the Court. Excuse me. I'm J.D. Rowell. I represent the government on appeal. I also represent the government at every stage of the trial of this case. The original indictment, the superseding indictment, and the actual trial of the case. I want to piggyback on some of the questions that the Court asked Mr. Mace. First of all, I would say that if this Court somehow found that Judge Seymour abused her discretion in failing to deny the motion to dismiss the superseding indictment, that the only relief that should be granted would be a remand for a resentencing. But I would suggest that even that shouldn't be done. What if the second indictment, the one that included increased amounts was found to be vindictive or a case is made for that? The remedy would have to be I suppose to strike that indictment and have him retried under the original indictment, wouldn't it? Well, not necessarily, Your Honor. I think, well, first of all, I think you should look at each count individually. And let's talk about count one. I would submit that there was, and for prosecutorial vindictiveness, they have to show that we sought a more serious charge. I don't think we did that. As the court noted, in the first indictment, we alleged a conspiracy. A more serious charge or adverse action, generally? I think, well, I think there are a couple of things. You have to show animus, you have to show ill will, and you have to show that the prosecution was not, or that the decisions could not be justified as a proper exercise of prosecutorial discretion. The reason why I raise that is because the defendant argues that adding the aiding and abetting allegations made it easier for the prosecution to make out its case adversely to the defendant. So I wonder whether that standing alone would be sufficient to make out a showing of vindictiveness if the motivation were, in fact, to punish the defendant. No, sir, I don't think it would. I think that the case law addresses the seriousness of the offense. I think adding aiding and abetting as a practical matter doesn't enhance the penalty at all. While it may provide an alternative theory by which the government can get a conviction, I would say that is evidence of a proper exercise of prosecutorial discretion, much more so than evidence of trying to punish a defendant for winning on appeal. It doesn't raise the sentence, it doesn't subject him to any enhanced penalties, it just provides for an alternative theory of prosecution. For prosecutorial vindictiveness, if the government can show a valid reason for taking the steps that it did, I would submit that makes the vindictive argument even harder to prove for the defendant. Let me ask you this, does the fact that Judge Seymour did take some remedial action in this case suggest that she thought there was something amiss? No, sir, I would suggest that Judge Seymour took that action because she was not satisfied with the explanation that I provided to her as to why we filed the second 851 on remand. They argue, the defense argues that as evidence, circumstantial evidence of animus or ill will. I believe this court talked about in U.S. versus Kincaid, and this court held the Fourth Circuit held that a presumption of vindictiveness does not arise unless the new sentence is actually harsher than that imposed prior to the successful appeal. Here, as your honors noted, the new sentence was exactly the same. There was no prejudice by virtue of the superseding indictment. I think given the posture of the case, and I think it's important, this is not fleshed out so much in the record, but during the first prosecution, or what I'll call the first prosecution prior to Mr. Bell asking for a remand, there was a plea agreement that was signed that included cooperation. We were attempting to work towards giving Mr. Bell a plea that allowed him to cooperate. We wanted to use him  and even though he pled on the day of trial, I think the record does reflect, and by virtue of the fact that we were able to reach a plea at the outset, that it was in a different posture. Once it was remanded, we were no longer in that posture. Initial prosecution had breached his plea agreement, he had been let to bond and allowed to cooperate prior to sentencing, he had violated the terms and conditions of his bond, found to have been continuing to deal drugs, and so he was no longer a viable cooperator to us in the second prosecution. Our arguments, I don't know that the record reflects this, but in hindsight, certainly, given the different posture of the case in the second prosecution, I think the filing of the 851, the second 851, would have been a valid, justifiable prosecutorial decision given that we no longer had a cooperator and we knew we were going to trial. But, as your honors noted, there is no prejudice to Mr. Bell. With respect to the aiding and abetting language, I would just submit that is not a more serious offense. It doesn't subject him to any harsher penalty and it certainly can be justified as a proper exercise of prosecutorial discretion. If an alternative theory of prosecution, when you're trying to get a conviction, isn't a valid ground for exercising prosecutorial discretion, I don't know what is. With respect to the Fair Sentencing Act, we told Judge Seymour, we're superseding to hold this defendant accountable for the most serious, readily provable offense. That has been the Department of Justice's policy for as long as I've been there. As the pre-sentence report reflects in the joint appendix on page 396, Mr. Bell was held accountable for 414,288 grams of cocaine and 1,456 grams of crack cocaine, far in excess of the thresholds that were charged in either indictment. And as your honors noted, he did not receive a more harsh penalty for going to trial. So for all those reasons, I don't think Mr. Bell can meet his burden. He can't show that Judge Seymour abused her discretion in refusing to quash or dismiss the superseding indictment and we would ask that your honors find that she did not abuse her discretion in doing so. Unless your honors have any questions on that issue, I'll move to the Batson issue. And your honors truly hit the nail on the head. The record is clear that the government offered race-neutral explanations for each of the preemptory strikes. Was Judge Seymour after your offer or proffer of those race-neutral reasons then required to affirmatively state whether or not those reasons were pretextual? Your honor, I think she made the finding by virtue of her denial of the motion, of the Batson motion. She didn't say that. She didn't say that expressly that she had found  reasons were proffered in good faith and were not pretextual and technically the way it works is that three-step process where the defendant has to make an initial showing and typically judges do away with that and turn to the government and say, well, why did you strike this juror, Mr. AUSA? And you offered reasons and at the end of all of that with respect to all of the jurors that were challenged, she simply said, I find that the government's reasons are race-neutral. But didn't say whether or not those race-neutral reasons were in fact pretextual or not. Is that a problem? I don't think so, your honor. I think it's implicit in her ruling. I think it's implicit in her findings. And I don't know, I'm not aware of any case law that says she has to make that explicit finding. I would just argue... Was there a suggestion of pretext during the course of trial? Was there... By the defense. Yes, sir. And all the record shows is that they raised the issue and I would submit that they did not make the prima facie showing. But as the courts have said, once the government starts offering reasons, we sort of skip that first step. But in response to each of the reasons that I articulated, they didn't offer any evidence. They simply made argument that our reasons were specious or I think the word that they used were suspicious. But they offer no evidence. And sometimes generally pointed out there was another juror that might also satisfy that criteria without identifying who the juror was. Yes, sir. And I think in some circumstances I actually made the argument and pointed out to the court that there were no other jurors similarly situated. That was not true with all of them. That was only true with several of them. It was only true that I made that argument with respect to all of them, Judge. My practice is when doing strikes is to be conscious of that and to be aware of that. I would submit that while the record may not reflect this and certainly we're bound by the record, I do not believe that there were any other similarly situated white jurors who were stricken for the same reason. The whole bat, the step process creates a muddle. Yes, ma'am. As you say, by proffering those race neutral reasons, you've already elided the prima facie case requirement. It's the kind of test that sounds good in theory and simply doesn't work in practice because you want to make the district court aware of the fact that there are race neutral reasons for what you've done but you're almost better off under the structure of Batson saying absolutely nothing. Yes, ma'am. I will certainly say that having, I didn't write this brief, another attorney in my office wrote this brief and I've studied it over the past couple of days. I've certainly learned more about Batson by virtue of this process than the trial process. Well, some U.S. attorneys will not say, will not proffer a reason because of that but that also looks bad. Yes, ma'am. See, just, it's it's just a very It's icky, for lack of a better term, when you've been accused It's hinky. Hinky, yes, ma'am. When you're When you're accused of acting racist, for lack of a better term, I think the natural response is to say, no, I'm not and to jump into this process. Well, I guess but only if the district judge asked you to. Did she? I don't recall, Your Honor. I don't recall. I know that my natural tendency is to go ahead I mean, in fact, in preparing the strikes, I actually write out to the side the reasons and so, quite frankly, I don't know that I was aware of this three-step process at the time. It's not something that I had studied up on. I think this was the first Batson challenge I had to respond to. Well, but you do agree that she didn't she didn't say the magic words pretext or lack thereof but your argument is that that's certainly implied from her final, ultimate rule. Yes, sir. Well, could it be race-neutral if it were pretextual?  could the well, the I would submit that all of the reasons are obviously race-neutral. Well, it could be facially race-neutral and the whole point is the judge then needs to dig deeper to decide whether or not there's something else lying behind the challenge. Well, I think I think there are two ways that this court can find that Judge Seymour made that finding. One is simply circumstantial evidence that she allowed the case to go forward and then two that there is no evidence of pretext. But if a court makes a finding that the race-neutral reason is given and accepts that inherent in that is that it was not pretextual. Yes. Because it would not be race-neutral it would be it could be the reason is to cover up a racial decision. Right. Non-race neutrality. Yes, sir. So, again I would just note that the reasons that we stated for striking these jurors are very well within the accepted reasons. As Judge Duncan noted two of the defendants were stricken based on the fact that they had prior convictions. Juror 34 for a marijuana conviction. Juror 199 for a shoplifting conviction. Juror 107 was struck for low education. I do recall that that was the only juror who had less than a high school education. He indicated he had more than a 6th grade education. And then there were two jurors jurors 206 and 226 who checked boxes on the juror questionnaire indicating that they could not be fair and or could not follow the law. They were we struck them for cause. We indicated that those jurors should be struck for cause and I think that is a valid reason for striking them for cause. The defense did not. The process that followed was for Judge Seymour to call those people up and give them an opportunity to explain their answer. Certainly if a prosecutor cannot strike someone who indicates on the form they can't be fair and then are rehabilitated in a preemptory situation that just doesn't seem to make sense to me. When you have a the questionnaire there is a reason for the questionnaire. We strike them for cause and then if they change their answer I think that should be well within our discretion on a preemptory strike. The other juror number 256 had child care issues which again are issues I think that this court and other courts have found are legitimate issues. I see I have just a few more minutes Your Honor. The light looks red to me. A few more seconds. I'm sorry. You just talked right through them. I don't understand the clock. You have something important in the clock that when it's red that means you're going through a red light. I apologize Your Honor. You have something that was important to tell us? Judges if I could cover the other issues very briefly one statement. You get 30 seconds. If you find by this record that the Miranda statement was admitted properly which I would submit that if you rely on Judge Seymour's findings of fact that you should find that they were not clearly erroneous all of the guidelines issues there's more than enough evidence to support Judge Seymour's finding on the guidelines issues that Mr. Bell was a career offender and if he was a career offender his sentence of 380 months was within the advisory guideline range and all of those other issues would be harmless error all those other enhancements. Thank you Your Honor. Thank you. Alright Mr. Mase. I'll be very brief and just discuss a few of the jurors that I think that this court would be able to evaluate that the reasoning the government gave for striking them is a pretext for a race based strike. Juror number 206 in particular was questioned by Judge Seymour and Judge Seymour asked him you checked this box it says you can't be fair. He tells the judge that's a mistake I made a mistake. The government had the opportunity to question him further about that. Nothing was done. Judge Seymour said okay I understand that. You're a trial attorney and somebody checks those boxes and they have to make a decision on checking the boxes and it looks pretty bad they're asked you can't be fair so I made a mistake. As an attorney you don't have to resolve that whether he made a mistake or whether he's credible. You say I'm just not sure and you strike him. I think it's totally legitimate to be cautious in that regard. Judge I would agree with you if it had been a white juror but in this case it was not and we had an African American defendant and here's a prima facie case when the government uses It has to do with race. It has to do with whether somebody's coming to court with a predisposition. Whether the court feels that the courts treat people unfairly and whether they can handle that unfairly and they check that box as a true expression of feeling and then they come and explain well that was a mistake. I didn't mean to say that. Your response indicated that you think it would have passed muster had the defendant been white. I don't think the government would have been striking this juror if the defendant had been white. You don't know that. I don't know that but as we go through hypotheticals. Excuse me. Does your answer depend on that? Because it seemed to. It does depend on it when you're dealing with this exact situation when you have an African American defendant and the government. The defendant would have to be African American as well. Not in every situation but in this situation. Any hypothetical can change what the pretext would be in a strike but in this situation and I understand Judge Niemeyer your position is these were all race neutral valid reasons. What I'm suggesting is I did read this with an eye of trying to read between the lines and you can smell a lot when you read a record. You can't know everything. I mean the district court and the jury sees things that we can never see on the cold record. But we can get some intuitions and hunches and you read something and you sort of sense there's something going on. I didn't sense that when I read this. I didn't look like these were concocted to get rid of African American. This example you used by checking the wrong box whether you agree whether the juror rehabilitated himself or herself it's a chance that the attorney doesn't want to take and he's got a peremptory and he says I'll just get rid of that juror. Now the government in this case thought that was severe enough to strike the person for cause. Well the person tries to the potential juror tries to correct or rectify the situation and maybe did in your judgment. But maybe didn't. But none of that has to do with race. I would respectfully disagree because the case that's laid out in this situation is they used every single challenge against African American jurors. I'm talking about the one thing we have to look at each one. Right. And as we look at them I don't disagree. There were a couple of those jurors that the government had a valid reason for. Your argument comes down to the fact that because all the strikes happened to be African American that in and of itself causes the problem. That is a great part of the argument your honor. It's not the complete argument. Well judge I quite frankly I believe it's absolutely pretextual to strike a juror. We don't have we don't know what the panel was we don't know what the jury was we don't know who was put in place and I must say in this kind of context I think we have to the district judges are very familiar with Batson and we have to give them some ability to make these determinations. I mean if we're going to overrule a district judge's ruling we've got to have some reason for doing so. We start with the proposition the district court got it right. Right. And when we review it and send it back and say oh the district court messed up in this area I think we ought to have more than this don't you think? No I know you don't think. Judge. Don't answer the question. I won't. I sound like I'm in front of the Senate right now. No yes or no. Anything further? No sir. I want to I notice that your court appointed and I want to recognize your service. Thank you judge. It's very important and we're very appreciative of it. Thank you judge. Your client can be appreciative too.
judges: Paul V. Niemeyer, Allyson K. Duncan, Albert Diaz